758

**MANCHESTER (HOME & EXPORT), Limited, v. PRINTZ BIEDERMAN CO.**

**Patent Appeal No. 5467.**

Court of Customs and Patent Appeals.
June 14, 1948.

Harry C. Bierman, of New York City, for appellant.

A. W. Murray, of Chicago Ill., for appellee.

Before GARRETT, Presiding Judge, and HATFIELD and JACKSON, Associate Judges.

GARRETT, Presiding Judge.

This is an appeal from the decision of the Commissioner of Patents, acting through the First Assistant Commissioner, affirming the decision of the Acting Examiner of Interferences in a trade-mark opposition proceeding.

On December 11, 1943, appellant filed an application in the Patent Office to have "Fairy Princess" registered for use as a trade-mark for children's coats. Appellant, according to its application, is a company under the laws of Great Britain located at Manchester in the County of Lancaster, England.[1] In its application the allegation was made that the mark had been registered in England February 20, 1942, and specimens showing the mark as actually used were filed with the application. The specimen reproduced in the record consists of the notation "Fairy Princess" printed in bold-faced type, the letters being capitals.

On June 3, 1944, appellee filed notice of opposition to the application, alleging: "Since a date long prior to 1942, the date of first use claimed by said applicant [appellant] the opposer [appellee] has continuously used and opposer [appellee] is now using and owns the trade marks 'Printzess' 'Yankee Printzess', 'Printzess Petite', 'Printzess Tourister' 'Printzess Knockabout', 'Printzess Deb', 'Printzess—Distinction in Dress', and other trade marks of which 'Printzess' is a part, as applied to women's, misses', juniors', teens', and children's outer wearing apparel, including coats, suits, skirts, dresses, jackets, scarfs, in Class 39, Clothing, and on textile fabrics in Class 42, Knitted, Netted, and Textile Fabrics."

Also, alleged registration of several of the marks, filing copies of such registrations with the notice for consideration under Patent Office rule 154(e), 35 U.S.C.A. Appendix.

It was further alleged that Fairy Princess "so nearly resembles" the quoted marks owned and used by appellee that its use by appellant would be likely "to cause

[1] As such it is, by reason of treaty agreement, entitled to all the rights, and privileges of the Trade-Mark Registration Act of February 20, 1905, 15 U.S. C.A. § 81 et seq.

confusion and mistake in the mind of the public and mislead purchasers," as to origin of the goods, children's coats (the goods of appellant) and the articles of wearing apparel made by appellee being alleged to be merchandise of the same descriptive properties.

On December 11, 1945, the Examiner of Interferences rendered his decision. He deemed appellee's registered mark "Printzess Knockabout," as applied to women's wearing apparel—namely jackets, coats, capes, suits, skirts, and waists—to be the most pertinent of the marks pleaded in the opposition. It was pointed out that the word "Knockabout" was disclaimed as descriptive. In substance, he held "Printzess" to be the dominant part of appellee's mark, since "Knockabout" was disclaimed, and held "Princess" to be "at least a very prominent portion of applicant's [appellant's] mark," if not the dominant feature thereof.

In a decision rendered December 27, 1945, on a request for reconsideration, the Examiner of Interferences said inter alia: "It seems to the examiner that the [his original] decision * * * clearly holds that the mark 'Fairy Princess,' considered as a whole, is so similar to the mark Printzess 'Knockabout,' also considered as a whole, as to be likely to lead to confusion in trade. Likewise, it is not deemed necessary that the examiner find as a fact that any portion of the applicant's [appellant's] mark be considered as the dominant portion. It is sufficient if it be found that mark considered in its entirety is confusingly similar to the opposer's [appellee's] mark, as has been done."

The appeal to the Commissioner of Patents having been taken, appellant filed its brief seemingly on October 11, 1946, and filed therewith a proposed disclaimer of the word "Princess." In the course of his decision the First Assistant Commissioner stated:

"Concurrently with its brief on appeal, applicant [appellant] filed a disclaimer of the word 'Princess' in its application, 'apart from the other features of the mark;' and now rests its case primarily upon the premise that this word is 'in the public domain' because descriptive. According to applicant [appellant] 'there is absolute proof that from 1876 and down to date, the word "Princess" has been used universally to designate or describe a certain style of women's garments.'

"Applicant [appellant] disavows any intention to question the validity of opposer's [appellee's] registration, but that is necessarily the purport of its argument. The word 'Knockabout' is clearly descriptive of opposer's [appellee's] goods; and if 'Princess' is likewise descriptive, so also is 'Printzess,' for these two words are 'substantially identical in all respects.'"

He pointed out that he had to assume the validity of appellee's registration, since the validity of a registered mark may be attacked only in a cancellation proceeding, and being of the view that "Princess," although disclaimed, "remains at least a prominent part of applicant's [appellant's] mark," held, in effect, that confusion would be likely to result from the concurrent use of "Printzess Knockabout" and "Fairy Princess" upon goods of the same descriptive properties.

Before us it is contended on behalf of appellant that "Princess" is a term descriptive of merchandise such as that to which appellant applies it and that to which appellee applies it. It is argued, in effect, that, therefore, the term "Princess" has no trade-mark significance and that it should be disregarded. It is urged on behalf of appellant, however, that the word "Printzess" in appellee's mark is in a different category. In the brief for appellant it is said: "The Appellee herein did not use the same word 'Princess' as Appellant used but had a special form and design of a word 'Printzess', which is a coined word derived from the corporate name of Appellee, Printz, with the suffix 'ess'. Also, the word 'Printzess' is written in distinctive Gothic letters. Therefore, * * * the comparison between the two words should have been made not in a broad sense but specifically comparing the spelling and the appearance of the two words. When one does so and bears in mind that the common word 'Princess' has no trademark significance, one readily concludes

that there can be no confusion between the words 'Princess' and 'Printzess."

In other words, it is argued on behalf of appellant that the word "Princess" in its mark has no trade-mark significance because it is descriptive, but that "Printzess" in the mark of appellee should be regarded differently.

It is somewhat difficult to understand why if appellant was of opinion that "Princess" had no trade-mark significance it included the word in its application, or why, if in the progress of the case it concluded that the word had no trade-mark significance, it did not cancel it rather than disclaim it.

A disclaimer is not a cancellation.

 There is retained in appellant's mark as a part thereof the word "Princess" which clearly conflicts with the word "Printzess," included in appellee's mark. In this opposition proceeding, as was held by the First Assistant Commissioner, registration of the mark "Printzess Knockabout," must be held valid. Its validity can be tested only by a cancellation proceeding.

The decision appealed from is affirmed.

Affirmed.

By reason of illness, O'CONNELL, Associate Judge, was not present at the argument of this case and did not participate in the decision.